UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EUGENE CASTELLE,<br>    Petitioner, | )<br>) | Case No. 3:22-cv-297 (KAD) |
| | ) | |
| v. | )<br>) | |
| TIMETHEA PULLEN, Warden of Federal<br>Correctional Institution at Danbury, in her<br>official capacity,<br>    Respondent. | )<br>)<br>)<br>)<br>) | SEPTEMBER 23, 2022 |

## ORDER OF DISMISSAL

Petitioner Eugene Castelle is an inmate who is currently confined at the Federal Correctional Institution in Danbury, Connecticut ("FCI Danbury"). On May 31, 2019, Petitioner was convicted by a jury of engaging in a racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), and running an illegal gambling business, in violation of 18 U.S.C. § 1955. *United States v. Castelle*, No. 18 CR. 15 (AKH), 2021 WL 1199471, at *1 (S.D.N.Y. Mar. 30, 2021). Petitioner was sentenced in the Southern District of New York to an above-guidelines sentence of 77 months of incarceration with three years of supervised release, a $100,000 fine, and forfeiture of $188,955 in criminal proceeds. *Id.*; *see also* Judgment, *U.S.A. v. Castelle*, No. 1-21-CR-4694 (S.D.N.Y.), ECF No. 659.

On February 24, 2022, Petitioner filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his conditions of confinement, the prison's failure to implement the CARES Act/Compassionate Release protocols, and the prison's failure to permit him to administratively exhaust his unsafe prison conditions complaint. Pet. 1, 6–7, ECF No. 1.[1]

---

[1] The page numbers cited to in this Order regarding any documents that have been electronically filed refer to the page numbers imprinted by the electronic case filing system on the header of the documents and not to the page numbers of the original documents, if any.

He requests to be released with a suspended sentence or, alternatively, to be afforded home confinement. *Id.* at 8. Petitioner also requests all of the same relief requested in *Dimartino v. Sage*, a prior § 2241 case filed by Petitioner and five other inmates challenging their conditions of confinement and seeking release to home confinements. *Id.*; *see Dimartino v. Sage*, No. 3:21-CV-00498 (KAD), 2022 WL 124308, at *1 (D. Conn. Jan. 13, 2022).

On March 2, 2022, the Court issued an order to show cause. Show Cause Order, ECF No. 4. On March 4, 2022, Respondent filed a motion to dismiss and a response to the Court's order to show cause. Resp't's Mot. to Dismiss, ECF No. 6. On March 25, 2022, Petitioner filed his response to both the motion to dismiss and the response to the show cause order. Pet'r's Resp., ECF No. 12.

Upon review of Respondent's motion and response, the Court concludes that the petition must be dismissed.

**Background**

Petitioner alleges violations of his rights under the First Amendment, Fifth Amendment Due Process Clause, and Eighth Amendment. Pet. at 6, 10. To support these allegations, Petitioner asserts the following relevant facts.[2]

At the time of filing, Petitioner was a sixty-one-year-old inmate who "almost died" on March 4, 2021 at FCI Danbury prior to being transferred to Danbury Hospital. *Id.* at 13.[3] At that

---

[2] The Court does not include herein the facts describing the allegedly inadequate medical care provided to inmates Michael Milchin and Kenneth Pelletier and the United States Senators' failure to investigate the problems at FCI Danbury. *Id.* at 14.

[3] Petitioner requests that the Court take judicial notice of the facts and exhibits from *Dimartino v. Sage*, 3:21-CV-00498 (KAD). Pet. at 6. The Court notes that the amended petition in *Dimartino* alleges that Petitioner suffers from asthma, obesity, and an unknown skin rash; that he was hospitalized in March 2020 due to COVID-19 complications; that he has scarring of the lungs and shortness of breath; and that he "was referred to outside medical for an ultrasound in 2020, and it's still pending." Am. Pet. 5, 3:21-CV-00498 (KAD), ECF No. 6. With that petition, Petitioner submitted exhibits including his emails to staff from March through April 2021 requesting a COVID test, lung scan, medical attention for his rash, and access to his BOP medical records. *See* Pet'r's Sealed Exs. 25–32, 3:21-CV-00498 (KAD),

time, he suffered from asthma, pneumonia, COVID-19, and sepsis. *Id.* He remained at Danbury Hospital for four days. *Id.* Petitioner claims that he has "issues" that render him "highly vulnerable to COVID-19." *Id.* at 7.

Petitioner asserts that overcrowding is a concern at FCI Danbury, where social distancing is "physically impossible." *Id.* at 11. He states that he lives in an "open bay auditorium" with bunk beds on each side of his bunk that are less than four feet away, and that he has less space than that provided for under BOP regulations. *Id.* at 12. He claims that he has been housed on twenty-four-hour confinement since Thanksgiving 2021, and his first period of recreation was on January 26, 2022, the same day that the United States Senators visited the facility. *Id.*

Petitioner has allegedly witnessed delayed and inadequate responses to inmates' sick-call requests, officers who have removed facial coverings to speak to inmates, and inmates exposed to COVID-19 being placed in the prison auditorium and removed only the day before the United States Senators toured FCI Danbury. *Id.* at 11–12.

Petitioner also alleges that he has been denied access to the grievance process at FCI Danbury. *Id.* at 13. FCI Danbury has allegedly refused to answer his "validly filed grievances, thereby rendering administrative exhaustion unavailable." *Id.* at 10. He alleges that FCI Danbury staff denied his grievances and sent him to the medical unit where he was on a list to be seen but was never called. *Id.* at 13. His emails to staff about his medical issues and COVID testing were allegedly not answered, and staff allegedly promised to allow him to file a grievance but would

---

ECF No. 10. Petitioner's medical records reflect that he was born in March 1960, was in the hospital for four days for pneumonia in March 2020, had what appeared to be serious medical conditions, and tested positive for COVID-19 in April 2020. *Id.* at 33–90. Further, in the instant matter, Respondent's exhibits of Petitioner's medical records indicate that Petitioner was hospitalized with sepsis from March 4 to March 8, 2020. Resp't's Sealed Exs. 44, ECF No. 8. This record strongly suggests that Petitioner has misstated the year of his Danbury Hospital four-day stay.

3

not provide him with the necessary form. *Id.* This alleged conduct continued until his emails reflecting that staff had frustrated his grievance process were filed in *Dimartino*. *Id.*

He further alleges that the settlement reached in *Whitted v. Easter*, No. 3:20-CV-00569 (MPS), 2021 WL 165015 (D. Conn. Jan. 19, 2021),[4] has been breached at FCI Danbury due to the prison allegedly refusing to implement the relief mandated by the CARES Act. *Id.* at 10. Petitioner states that he has witnessed other inmates submit grievances seeking CARES Act and compassionate release relief, but he does not believe that the Warden has answered any of these grievances. *Id.* at 12.

On March 30, 2021, Petitioner's sentencing judge, the Honorable Alvin K. Hellerstein of the Southern District of New York, denied Petitioner's request for compassionate release under 18 U.S.C. § 3582. *See Castelle*, 2021 WL 1199471, at *4. Specifically, Judge Hellerstein held that Petitioner had not satisfied his burden of showing that the factors under Section 3553(a) and "extraordinary and compelling reasons" warranted a reduction in his sentence. *Id.* at *3. The court concluded "that reducing [Petitioner's] sentence would fail to 'reflect the seriousness of the

---

[4] *Whitted* was a multi-party habeas class action filed by several inmates incarcerated at FCI Danbury who alleged that Defendant Easter "was violating the Eighth Amendment rights of FCI Danbury prisoners by (i) failing to make full use of her home confinement and compassionate release authority, and (ii) failing to implement adequate measures to prevent the continued spread of COVID-19 at FCI Danbury." *See Wallace v. Easter*, No. 3:20-CV-01265 (KAD), 2020 WL 7024928, at *3 (D. Conn. Nov. 30, 2020). The Settlement Agreement stated that it:

> is entered into on behalf of all members of the Medically Vulnerable Class, consisting of any person incarcerated at FCI Danbury anytime from the Effective Date until the termination date of this Agreement, October 31, 2021, unless otherwise modified by the parties pursuant to the terms of this Agreement, who either: (a) is a List One Inmate or List Two inmate, or (b) possesses one or more underlying medical conditions which, according to current CDC guidance (i.e., the CDC guidance in effect at the time of the individual's home confinement review), either (i) places that inmate at increased risk of severe illness from COVID-19 ("Tier 1 medical conditions"); or (ii) might place that inmate at an increased risk of severe illness from COVID-19 ("Tier 2 medical conditions").

*Id.*

offense,' 'promote respect for the law,' 'provide just punishment,' or to 'protect the public from further crimes of the defendant.'" *Id.* (citing factors under 18 U.S.C. § 3553(a)). The court recognized that Petitioner's "obesity, asthma, and lung scarring, . . . along with [Petitioner's] age, may be COVID-19 risk factors," but noted that "[Petitioner's] claim that the COVID-19 pandemic poses a significant risk that necessitates his immediate release is further belied by the fact that he has already contracted the virus and that he has been offered and refused the COVID-19 vaccine." *Id.* (citing cases denying compassionate release in light of the defendants' voluntary refusal of vaccines or risk-mitigation measures). Thus, the court concluded that "'release would provide an undue windfall that would severely undermine . . . the sentence this Court imposed.'" *Id.* (quoting *United States v. Brady*, No. 18 Cr. 316, 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020)).

Petitioner filed the instant petition on February 24, 2022.

**Standard of Review**

The "Court reviews a motion to dismiss a habeas petition according to the same principles as a motion to dismiss a civil complaint under Fed. R. Civ. P. 12(b)(6)." *Spiegelmann v. Erfe*, No. 3:17-CV-2069 (VLB), 2018 WL 1582549, at *1 (D. Conn. Mar. 29, 2018). A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)). When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the nonmoving party,

5

and decide whether it is plausible that the nonmoving party has a valid claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).[5]

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up). Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (cleaned up).

Because Petitioner filed his section 2241 petition *pro se*, the Court must construe his filings "liberally" and interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quotation omitted); *see also Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994) (explaining that *pro se* litigants should be afforded "special solicitude" because they are not represented by counsel). Despite this special solicitude, the petition "must still 'include sufficient factual allegations to meet the standard of facial plausibility'

---

[5] In deciding a motion to dismiss, the Court may also consider documents attached to the complaint, documents incorporated by reference therein, documents relied upon in bringing the action which were in Petitioner's possession or of which Petitioner had knowledge, and matters of which judicial notice may be taken. S*ee Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002).

to survive a motion to dismiss under Rule 12(b)(6)." *Anderson v. Williams*, No. 3:15CV1364 (VAB), 2017 WL 855795, at *6 (D. Conn. Mar. 3, 2017) (quoting *Sentementes v. Gen. Elec. Co.*, No. 3:14-CV-00131 (VLB), 2014 WL 2881441, at *2 (D. Conn. June 25, 2014)).

**Discussion**

The Court may entertain a petition for a writ of habeas corpus from a person in custody challenging the legality of his detention on the ground that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). In the Second Circuit, federal inmates may also petition for a writ of habeas corpus under section 2241 challenging a condition of their confinement. *See Thompson v. Choinski*, 525 F.3d 205, 209 (2d Cir. 2008).

Respondent raises three arguments in support of dismissal of the petition. First, Respondent argues the Court lacks jurisdiction under 18 U.S.C. § 3582 to consider Petitioner's requests for a sentence reduction, compassionate release, or home confinement. Resp't's Mot. to Dis. 5–10, ECF No. 6. Second, Respondent asserts that the Court is barred under the Prison Litigation Reform Act ("PLRA") from entering an order for home confinement. *Id.* at 10–16. Third, Respondent maintains that Petitioner has failed to state any plausible claim of a First or Fifth Amendment violation. *Id.* at 16–17.[6]

The Court agrees that the petition must be dismissed because the Court lacks jurisdiction to afford the requested relief of an order for release or home confinement.

---

[6] Respondent does not make any claim that Petitioner failed to exhaust his administrative remedies or that Petitioner fails to state a plausible Eighth Amendment claim, but reserves such defenses should the petition survive the motion to dismiss. *Id.* at 17.

Sentence Reduction and Compassionate Release

A district court "may not modify a term of imprisonment once it has been imposed," except in the limited circumstances set forth under 18 U.S.C. § 3582(c). A request for a sentence reduction or for compassionate release under 18 U.S.C. § 3582 must be made to the sentencing court that imposed that sentence. *See United States v. Avery*, 807 F. App'x 74, 77 (2d Cir. 2020); *United States v. De Jesus Sierra*, No. 10 CR 416 (VM), 2021 WL 354954, at *3 (S.D.N.Y. Feb. 2, 2021) (explaining that "Congress amended 18 U.S.C. § 3582(c)(1)(A)(i) to provide the sentencing judge jurisdiction to consider a defense motion for Reduction in Sentence (RIS or 'Compassionate Release')"); *Dov v. Bureau of Prisons*, No. 20 Civ. 4343 (SLC), 2020 WL 3869107, *3 (S.D.N.Y. July 9, 2020) (denying compassionate release where the sentencing judge, in another district, had previously denied a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), noting that "such a request must . . . be made to the sentencing court" and the petitioner "made that application, which [the sentencing judge] considered and denied").

In this instance, Petitioner's sentencing court is the Southern District of New York, which has already denied his request for compassionate release. *See Castelle*, 2021 WL 1199471, at *3. Thus, to the extent that Petitioner requests this Court to afford him a sentence reduction or compassionate release, this Court lacks jurisdiction to consider his request.

Home Confinement

The Court also lacks jurisdiction to consider Petitioner's request for release to home confinement. The "BOP has the exclusive authority to determine the facility where an inmate will serve his sentence and to transfer the inmate from one facility to another." *Milchin v. Warden*, No. 3:22-CV-195 (KAD), 2022 WL 1658836, *2 (D. Conn. May 25, 2022). Any decision of the BOP

relating to the place of confinement "is not reviewable by any court." 18 U.S.C. § 3621(b); *see U.S. v. Kanagbou*, 726 F. App'x 21, 25 n.1 (2d Cir. 2018) (noting that the "district court does not control how the Executive Branch carries out a defendant's sentence"). Although Congress expanded the authority of the BOP to transfer inmates to home confinement if certain criteria are met under the CARES Act, Pub. L. No. 116-136, 134 Stat. 281 (2020), the decision to grant a transfer to home confinement under the Act is nonetheless reserved to the discretion of the BOP. *Milchin*, 2022 WL 1658836, at *2. "[C]ourts considering requests to be transferred to home confinement have consistently denied such requests, as they lack authority to order such transfers." *Id.* (citing *U.S. v. Woody*, 463 F. Supp. 3d 406, 408–09 (S.D.N.Y. 2020)). Accordingly, the Court lacks authority to issue an order releasing Petitioner to home confinement.

PLRA

Respondent further argues that the PLRA applies to Petitioner's conditions of confinement claims and that it bars the Court from ordering Petitioner's home confinement or release.

The PLRA restricts the types of relief that federal courts may award in "any civil action with respect to prison conditions." 18 U.S.C. § 3626(a). Therefore, the PLRA's requirements and limitations will apply to the instant petition to the extent that it challenges "prison conditions," rather than "the fact or duration of confinement in prison." *Dimartino*, 2022 WL 124308, at *4 (quoting *Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 433–35 (D. Conn. 2020)).

In *Dimartino*, this Court held that the requirements and limitations of the PLRA applied to the petitioners' section 2241 petition challenging their conditions of confinement, which included a medical deliberate indifference claim similar to that asserted by Petitioner in the instant petition. *See id.* at *3–6. Specifically, the Court noted that the petitioners' claim about the respondent's

deliberate indifference to their serious medical conditions was made "in a fashion very similar to a civil rights claim brought pursuant to 42 U.S.C. § 1983." *Id.* at *5. The Court explained that such conditions did "not inhere to the fact of [the petitioners'] confinement," but rather related to the conditions of their confinement, "because the concerns raised can be remedied through appropriate injunctive relief" such as an order "to provide appropriate medical care, on both an individual and systemic basis." *Id.* The Court observed, however, that the petitioners had not requested such relief and had not articulated how release from custody was "necessary to alleviate the alleged constitutional injuries, a showing that might implicate 'the fact or duration of' their confinement for purposes of the PLRA." *Id.*

After determining that the PLRA applied to the petitioners' claims, the Court next considered whether the petitioners' request for home confinement "or any *further* relief" was barred under the PLRA's provision that prospective relief be "narrowly drawn, extend[] no further than necessary to correct the violation of the Federal right, and [be] the least intrusive means necessary to correct the violation of the Federal right." *Id.* (quoting 18 U.S.C. § 3626(a)(1)(A)). The Court concluded that the requested relief did not present the least intrusive remedy to correct the Federal violation and was not narrowly drawn "given the availability of injunctive relief tailored to [the petitioners'] individual medical needs." *Id.* In addition, the Court explained that the petition was also subject dismissal because the Court lacked the authority under the PLRA to grant a prison release order, which could only be entered by a three-judge panel and only after satisfaction of several other prerequisites. *Id.*; 18 U.S.C. § 3626(a)(3).[7]

---

[7] Section 3626(a)(3) provides:

**(A)** In any civil action with respect to prison conditions, no court shall enter a prisoner release order unless—

Because the same analysis applies to Petitioner's pending section 2241 petition, the PLRA's limitations likewise bar this Court from affording Petitioner his requested relief for release or home confinement. If Petitioner could prevail on his Eighth Amendment conditions of confinement claims, he would be entitled to an order that Respondent provide him with appropriate medical care or constitutional conditions of confinement. *See Reynolds v. Petrucci*, No. 20-CV-3523 (LLS), 2020 WL 4431997, at *2 (S.D.N.Y. July 29, 2020) (holding that the appropriate remedy for unconstitutional conditions of confinement challenged in a 2241 petition is relief from the unconstitutional conditions, not release from custody). Here, Petitioner's requested relief to be released from prison or to be released to home confinement is neither narrowly drawn nor the least intrusive means to remedy the asserted Eighth Amendment violation. Likewise, the Court is barred under the PLRA from entering a prison release order without a three-judge panel, and Petitioner's

---

**(i)** a court has previously entered an order for less intrusive relief that has failed to remedy the deprivation of the Federal right sought to be remedied through the prisoner release order; and

**(ii)** the defendant has had a reasonable amount of time to comply with the previous court orders.

**(B)** In any civil action in Federal court with respect to prison conditions, a prisoner release order shall be entered only by a three-judge court in accordance with section 2284 of title 28, if the requirements of subparagraph (E) have been met.

**(C)** A party seeking a prisoner release order in Federal court shall file with any request for such relief, a request for a three-judge court and materials sufficient to demonstrate that the requirements of subparagraph (A) have been met.

**(D)** If the requirements under subparagraph (A) have been met, a Federal judge before whom a civil action with respect to prison conditions is pending who believes that a prison release order should be considered may sua sponte request the convening of a three-judge court to determine whether a prisoner release order should be entered.

**(E)** The three-judge court shall enter a prisoner release order only if the court finds by clear and convincing evidence that--

**(i)** crowding is the primary cause of the violation of a Federal right; and

**(ii)** no other relief will remedy the violation of the Federal right.

**(F)** Any State or local official including a legislator or unit of government whose jurisdiction or function includes the appropriation of funds for the construction, operation, or maintenance of prison facilities, or the prosecution or custody of persons who may be released from, or not admitted to, a prison as a result of a prisoner release order shall have standing to oppose the imposition or continuation in effect of such relief and to seek termination of such relief, and shall have the right to intervene in any proceeding relating to such relief.

claim fails to satisfy the PLRA's requirements for requesting the convening of a three-judge panel consistent with section 3626(a)(3).

Accordingly, it is clear on the face of the petition that the Court both lacks jurisdiction and is barred from affording the requested relief. Thus, the petition must be dismissed without prejudice for lack of jurisdiction.

<u>First and Fifth Amendment Claims</u>

Although the Court dismisses the petition for lack of jurisdiction, the Court further notes that Petitioner has not stated a cognizable First Amendment violation of his right to redress of grievances or a Fifth Amendment due process violation based on the alleged frustration of his ability to pursue administrative remedies by BOP staff. Pet. at 13.

A BOP staff violation of a BOP regulation does not give rise to a constitutional violation. *See Milchin v. Warden*, No. 3:21-CV-1361 (KAD), 2022 WL 1104963, at *6 (D. Conn. Apr. 13, 2022) (noting that "BOP regulations are not themselves constitutional rights" (quotation omitted)). Likewise, a federal prisoner does not have a constitutional right to the BOP prison grievance procedure. *See McKay v. U.S. Dep't of Just.*, 406 F. App'x 570, 570 n.1 (3d Cir. 2010) ("[T]here is no constitutional right to a prison grievance system."); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) ("[T]he federal regulations providing for an administrative remedy procedure do not in and of themselves create a liberty interest in access to that procedure. When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance.").

Thus, Petitioner cannot assert a cognizable constitutional violation based on a denial of access to the courts resulting from his inability to exhaust his BOP administrative remedies. Even if BOP staff frustrated Petitioner's access to his administrative remedies, Petitioner's habeas claims would not be precluded from a merits review on nonexhaustion grounds because his available remedies would have been rendered incapable of granting relief or unavailable. *See Martinez-Brooks*, 459 F. Supp. 3d at 436–37 (noting that judge-made exceptions to Section 2241's habeas exhaustion requirements include futility, incapability, and undue prejudice); *Ross v. Blake*, 578 U.S. 632, 643–44 (2016) (holding that an inmate need not exhaust administrative procedures as required by the PLRA "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" when a procedure is "so opaque that it becomes, practically speaking, incapable of use;" or "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation").

Because Petitioner has no constitutional right to the BOP administrative procedures, he is not entitled to habeas relief based on the asserted BOP staff's misconduct that allegedly frustrated his exhaustion of his BOP remedies.

**Conclusion**

For the foregoing reasons, Respondent's motion to dismiss (ECF No. 6) is GRANTED. Accordingly, Petitioner's habeas petition is DISMISSED with prejudice. The clerk is instructed to close this case. Any appeal from this order would not be taken in good faith. Thus, a certificate of appealability will not issue.

**SO ORDERED** this 23rd day of September 2022 at Bridgeport, Connecticut.

                                               */s/ Kari A. Dooley*
                                               KARI A. DOOLEY
                                               UNITED STATES DISTRICT JUDGE